IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

UNITED STATES OF AMERICA,        ) Case No. 15-06004-02-CR-SJ-DGK
                                 )
            Plaintiff,           ) Kansas City, Missouri
                                 ) June 9, 2017
v.                               )
                                 )
SABRENA LYNN MORGAN,             )
                                 )
            Defendant.           )
_____  )


TRANSCRIPT OF HEARING ON CHANGE OF PLEA
BEFORE THE HONORABLE ROBERT E. LARSEN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          Mr. Bradley K. Kavanaugh
                            Assistant United States Attorney
                            400 E. Ninth St., Ste. 5510
                            Kansas City, MO  64106
                            (816) 426-3122

For the Defendant:          Mr. David S. Bell
                            Wyrsch, Hobbs & Mirakian
                            1200 Main Street, Ste. 2110
                            Kansas City, MO  64105
                            (816) 221-0080

Court Audio Operator:       Ms. Jan Martin

Transcribed by:             Rapid Transcript
                            Lissa C. Whittaker
                            1001 West 65th Street
                            Kansas City, MO  64113
                            (816) 914-3613


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1    (Court in Session at 11:09 a.m.)

2    THE COURT: Good morning, everyone. I have a plea

3    that's going to be taken this morning in the case of the *United*

4    *States of America vs. Sabrena Lynn Morgan*. The number of the

5    case is 15-6004-02-CR-SJ-DGK. Let me have the AUSA's appearance,

6    please.

7    MR. KAVANAUGH: Brad Kavanaugh on behalf of the United

8    States, Your Honor. Good morning.

9    THE COURT: Thank you. Counsel for Ms. Morgan, please?

10    MR. BELL: Good morning, Your Honor. David Bell on

11    behalf of Ms. Morgan who appears today in person.

12    THE COURT: Okay. Now, we have it scheduled today for

13    an anticipated plea. Let me just get my paperwork organized

14    here. And with regard to the plea, I should make a record first

15    and foremost that this is a case that's currently assigned to a

16    different judge. It's assigned to District Court Judge Kays.

17    Judge Kays has asked me if I would take the plea on the case with

18    the understanding that he will do, obviously, the final

19    sentencing here. I need to get -- make sure that everybody's in

20    agreement that they're concurring with Judge Kays' request that I

21    take the plea here. Does the Government have any objection to me

22    doing that?

23    MR. KAVANAUGH: No objection, Your Honor.

24    THE COURT: And Mr. Bell, have you talked to your client

25    about that?

1        MR. BELL:  I have, Judge, and just so the Court's aware,

2   it was our request that this take place on this day.  And,

3   therefore, it's because of our request that we're before Your

4   Honor.  I've discussed that with my client -- the difference

5   between Magistrate and Article III judges.  There is a provision

6   in the Plea Agreement with regard to it and we consent to Your

7   Honor taking the plea.  Thank you.

8        THE COURT:  Okay.  And is that your position, Ms.

9   Morgan?

10       MS. MORGAN:  Yes, sir.

11       THE COURT:  Do you want to ask me any questions about

12  that?

13       MS. MORGAN:  No.

14       THE COURT:  Okay.  I just want to make sure everybody is

15  on board.  So, now, at any time during the course of these

16  proceedings, if you have any questions or you need to confer with

17  Mr. Bell, all you need to do is raise your hand and let me know

18  that you want to do that and I'll give you an opportunity to do

19  that.  The other thing is you should feel comfortable in asking

20  me any questions while we go through this process.  Okay?

21       MS. MORGAN:  Okay.

22       THE COURT:  All right.  The first thing I need to do is

23  ask Mr. Kavanaugh, there are a number of counts that we

24  anticipate Ms. Morgan is going to plea to and I'd like Mr.

25  Kavanaugh to go ahead and read those counts.

1    MR. KAVANAUGH:  Yes, Your Honor.  Pursuant to the Plea

2    Agreement, the defendant is agreeing to plead guilty to Counts

3    Three, Five, and Seven.  Count Three reads as follows:  That on

4    or about January 1st, 2010, and January 13th, 2015, within the

5    Western District of Missouri, other defendants and the defendant,

6    Sabrena Lynn Morgan, in furtherance of and during and in relation

7    to drug-trafficking crime for which they may be prosecuted as set

8    out in this Indictment, did knowingly and intentionally carry,

9    possess and use firearms, to wit: a loaded Springfield Armory XD-

10   40 .40-caliber semiautomatic handgun, bearing Serial Number

11   XD352133, a New England 12-gauge shotgun bearing Serial Number

12   NF386490, various unrecovered firearms identified by numerous

13   drug customers and charged and uncharged co-conspirators as in

14   the possession of the defendants during the conspiracy period

15   including a Pink pump-action shotgun photographed by law

16   enforcement at Defendant Morgan's residence and a loaded 9mm Hi-

17   Point pistol and a loaded Smith & Wesson .22-caliber pistol from

18   a residence where Dothage was arrested, all contrary to

19   provisions of Title 18, United States Code, Section 924(c).  As

20   to Count Five of the Superseding Indictment, that on or between

21   January 1st, 2010, and January 13th, 2015, said dates being

22   approximate, within the Western District of Missouri, the

23   defendants, in addition to Sabrena Lynn Morgan, did knowingly

24   rent, use, maintain, manage and control any place for the purpose

25   of distributing and using methamphetamine and heroin, Schedule I

and Schedule II controlled substances, to wit: their residences

in the Western District of Missouri, all contrary to provisions

of Title 21, United States Code, Sections 856(a) and (b).  And as

to Count Seven of the Superseding Indictment, on or between

January 1st, 2010, and July 7th, 2015, the exact dates unknown to

the Grand Jury, within in the Western District of Missouri, other

named defendants and this defendant, Sabrena Lynn Morgan, did

knowingly and intentionally combine, conspire, confederate, and

agree with each other and others, both known and unknown to the

Grand Jury, to distribute 500 grams or more of a mixture or

substance containing a detectable amount of methamphetamine, a

Schedule II controlled substance contrary to the provisions Title

21, United States Code, Section 841(a)(1), (b)(1)(A), and 846.

THE COURT:  Thank you.  Ms. Morgan, do you understand

what you're charged with in Counts Three, Five and Seven?

MS. MORGAN:  Yes, sir.

THE COURT:  And I'd ask counsel, would you go through

the penalty ranges with Ms. Morgan for me?

MR. KAVANAUGH:  Yes, Your Honor.  As to Count Three,

possessing a firearm with a drug-trafficking offense, not less

than five years and not more than life imprisonment, not more

than a $250,000 fine, not more than five years supervised

release, a $100 mandatory special assessment.  It should be noted

also by statute that this count -- the imposition of sentence, I

note this count must run consecutive to the imposition of

1 sentence under any other counts, is a Class A felony.  As to

2 Count Five, maintaining a drug premises, not more than 20 years

3 imprisonment, not more than a $500,000 fine, not more than three

4 years of supervised release, again, a $100 mandatory special

5 assessment.  This is a Class C felony.  As to Count Seven, that's

6 conspiracy to distribute methamphetamine in excess of 500 grams

7 or more, not less than 10 years and not more than life

8 imprisonment, not more than a $10 million fine, not less than

9 five years of supervised release, again, a $100 mandatory special

10 assessment.  This is a Class A felony.  In addition, Your Honor,

11 there is also the admission to the Forfeiture Allegation as

12 contained within the Superseding Indictment.

13      THE COURT:  Thank you.  Do you understand the penalties

14 on those three counts?

15      MS. MORGAN:  Yes, sir.

16      THE COURT:  Okay.  Now, Ms. Morgan, I'm going to go

17 through all of the rights that you're giving up if you want to go

18 ahead and proceed with this guilty plea pursuant to the plea

19 bargain arrangement here.  And they are significant, so I know

20 that Mr. Bell, in his ususal thorough fashion, has talked to you

21 about all this but we just need to make a record here so that I'm

22 assured that you understand all those rights.  You understand

23 that you have a right to have this matter presented to a trial

24 jury and there would be 12 members of that jury and all 12 of

25 them would have to agree.  They'd have to be unanimous in their

1  verdict before they could return here in court and find you

2  either not guilty or guilty.  Do you understand that?

3          MS. MORGAN:  Yes.

4          THE COURT:  Do you understand that during the course of

5  the trial, you would have the right to be assisted by counsel and

6  Mr. Bell would do all the things that a well-prepared,

7  knowledgeable, criminal defense lawyer does.  He would help you

8  select a jury.  He would make an opening statement to the jury

9  about what the evidence anticipated is going to be.  He'd also

10 cross-examine the Government's witnesses.  He would also present

11 whatever evidence you wanted the jury to hear.  And, finally,

12 he'd argue the case to the jury as to why you should be acquitted

13 of these counts.  Do you understand that that would be his role

14 during the course of this trial?

15         MS. MORGAN:  Yes, sir.

16         THE COURT:  Do you also understand that during the

17 trial, you would be presumed to be innocent of these allegations.

18 In other words, the scales of justice would already be tilted in

19 your favor and the Government would have to overcome that

20 presumption of innocence and then prove your guilt beyond a

21 reasonable doubt.  Beyond a reasonable doubt is the highest

22 standard of proof required in any proceeding in the United

23 States.  Do you understand that?

24         MS. MORGAN:  Yes, sir.

25         THE COURT:  Do you also understand that during the

1  course of the trial, you would have a right to be confronted by
2  the Government's witnesses against you.  And your lawyer, Mr.
3  Bell, would have a right to cross-examine those witnesses to
4  bring out favorable evidence for your side of the case or to show
5  the jurors that those witnesses should not be believed.  Do you
6  understand that right?

7        MS. MORGAN:  Yes, sir.

8        THE COURT:  Do you understand that during the course of
9  the trial, you would also have a right to testify if you wanted
10  to testify.  Do you know that?

11        MS. MORGAN:  Yes.

12        THE COURT:  Correspondingly, do you know that you also
13  have a right not to take the stand and testify and the jury would
14  be told that they could not draw any adverse or bad inference
15  from the fact that you didn't take the stand and testify.  Do you
16  understand that right?

17        MS. MORGAN:  Yes, sir.

18        THE COURT:  Do you also understand that you have a right
19  to have witnesses compelled to come down here under federal court
20  order?  We'd issue subpoenas.  So, if you wanted to have
21  witnesses come down here and testify, we would issue those orders
22  and have them appear.  Do you know that right?

23        MS. MORGAN:  Yes.

24        THE COURT:  Do you also know that during the course of
25  the proceedings, you might decide that you don't want to testify

1 and that you don't want to call any other witnesses and you

2 simply want to stand on the presumption of innocence and the high

3 standard of proof beyond a reasonable doubt and have Mr. Bell

4 argue that the Government has failed to prove their case here?

5 And sometimes that actually results in an acquittal around here.

6 Do you understand that right?

7         MS. MORGAN:  Yes.

8         THE COURT:  Do you also understand that if you went to

9 trial and there was a guilty verdict as to any of these counts,

10 that would not end the discussion?  There would then be an appeal

11 to the Eighth Circuit Court of Appeals and there would be three

12 judges on that panel who would hear the arguments of counsel and

13 if two of those three judges thought you didn't get a fair shake

14 down here, they would reverse your conviction and send it back

15 down to us and tell us either re-try this case or dismiss the

16 charges against you.  Do you understand that right?

17         MS. MORGAN:  Yes, sir.

18         THE COURT:  Do you also understand that when you tell me

19 you want to come in here and plead guilty pursuant to this plea

20 bargain arrangement, you're giving up all these significant

21 constitutional and other rights and the only things that's going

22 to happen here is there's going to be a sentencing by Judge Kays?

23 I'll order a Presentence Report, you'll get to see it, and object

24 to any parts you think are erroneous but then at some point the

25 judge is going to sentence you.  Do you understand that?

1          MS. MORGAN:  Yes.

2          THE COURT:  Okay.  Now, in this case, this has been an

3    open file discovery case by the United States.  I know that from

4    my experience in the case.  And I know that -- I think Bruce

5    Rhodes, who's got this case -- isn't this Bruce Rhodes' case, Mr.

6    Kavanaugh?

7          MR. KAVANAUGH:  Yes, Your Honor.

8          THE COURT:  Yeah.  So he's provided full discovery here.

9    Mr. Bell, have you had a chance to review that discovery and talk

10   about it with Ms. Morgan?

11         MR. BELL:  Yes, Your Honor.

12         THE COURT:  And from your review of that discovery do

13   you think it's in her best interest to plead guilty pursuant to

14   this plea bargain arrangement?

15         MR. BELL:  I do, Your Honor.

16         THE COURT:  Okay.  Now, Ms. Morgan, during the course of

17   the proceedings here I need to alert you to the fact that I'm

18   going to place you under oath and I'm going to ask you some

19   questions about why it is you actually think you're guilty of

20   these three counts.  Not why you're innocent but why you think

21   you're guilty, because the court doesn't want to accept any

22   guilty pleas from anyone if they think, no, I didn't do this.

23   So, I'm going to put you under oath and I'm going to ask you

24   questions about that.  And because you're under oath, you have to

25   tell me the truth, right?

1    MS. MORGAN:  Yes.

2    THE COURT:  And you'll do that.

3    MS. MORGAN:  Yes.

4    THE COURT:  Won't you?  Right.  Okay.  Now, you

5    understand and I -- that if you wouldn't tell me the truth, that

6    could implicate a potential perjury charge here and nobody wants

7    to see that happen.  So, just be aware of the fact that that's

8    always out there, so you have to tell me the truth.  With regard

9    to the factual basis for the plea, I've read the Plea Agreement

10   and I'm familiar with it.  I know there's a section in there that

11   deals with the factual basis but can the Government outline for

12   me just briefly what the underlying facts would be should this

13   case go to trial?

14   MR. KAVANAUGH:  Yes, Your Honor.  Again, incorporating

15   the more detailed Paragraph 3 of the Plea Agreement, consisting

16   of the factual basis, in brief, it would be that in 2010, law

17   enforcement initiated an investigation into a drug-trafficking

18   organization distributing methamphetamine in the northwest

19   Missouri and northeast Kansas area.  Indictments followed

20   thereafter.  Through the course of that prosecution, in addition

21   to interviews, proffers, and additional investigation by law

22   enforcement, additional defendants were identified as being

23   involved in the distribution conspiracy.  And the time period for

24   that drug-trafficking conspiracy was from 2010 to 2015.  But, in

25   particular, are José and Gabriel Ruiz and Gregory Bullock were

the primary sources of supply of the methamphetamine as part of this drug-trafficking conspiracy. That the Ruiz brothers and Bullock obtained large amounts of methamphetamine then sold and distributed it to among others, Sabrena Morgan and those defendants identified within the Superseding Indictment. That thereafter those defendants, including Sabrena Morgan, distributed that methamphetamine to others throughout Clay, Ray, Clinton and Buchanan Counties, all within the Western District of Missouri. And that during the dates of this conspiracy that the Defendant Morgan during and in relation to and in furtherance of the drug-trafficking conspiracy was in actual or constructive possession of and carried firearms. Again, these acts all occurred within in the Western District of Missouri and included some or all of the following firearms: a Pink pump-action shotgun recovered from Morgan's residence after her arrest and various unrecovered firearms identified by numerous drug customers and charged and uncharged co-conspirators as in the possession of the defendant during the conspiracy period. During the dates of the conspiracies, Morgan and others maintained control of physical places within the Western District of Missouri for at least one purpose of storing, distributing and using methamphetamine. In 2014, multiple witnesses gave statements about their knowledge of and involvement with Morgan and other conspirators in obtaining and distributing methamphetamine. Those statements and others obtained later detail that Morgan obtained large amounts of

1  methamphetamine from the Ruiz brothers and others, then

2  distributed the methamphetamine to a number of others, some of

3  whom redistributed it again.  The money that Morgan received from

4  these -- from those she distributed to was then used to obtain

5  additional methamphetamine for distribution.  Morgan's

6  involvement in the conspiracy with others resulted in a

7  methamphetamine responsibility for Morgan in excess of 5

8  kilograms of methamphetamine.

9      THE COURT:  Okay.  Mr. Bell, do you agree that the

10  Government's file reflects the evidence that the prosecutor's

11  just laid out?

12      MR. BELL:  I do, Your Honor.  May I remain seated during

13  the answering of the questions, Your Honor?

14      THE COURT:  Yeah, you don't need to stand up.

15      MR. BELL:  And, Judge, we have reviewed the discovery

16  and we -- I agree with the Government's recitation.

17      THE COURT:  Okay.  Then, I'd ask you now, Ms. Morgan, if

18  you would raise your right hand for me, please?

19          SABRENA LYNN MORGAN, DEFENDANT, SWORN

20      THE COURT:  Okay.  Now, I'm going to ask you a couple of

21  general questions and then I'm going to get more deeper into the

22  weeds here on the elements.  But you've heard the prosecutor's

23  statement here about the underlying facts and I think it's

24  basically contained in that third paragraph of the Plea

25  Agreement.  Do you agree that they have that evidence and they

1  could produce that evidence if this case went to trial?

2        MS. MORGAN:  Yes.

3        THE COURT:  Now, with regard to the factual basis here,

4  I'm going to ask you to turn to Count Three of the Indictment and

5  I'll just ask you some general questions and then we'll get more

6  into the depth of this.  But in terms of Count Three, is it true

7  that between the dates of January 1st of 2010, and January 13th of

8  2015, that you were here in the general Kansas City, Missouri,

9  metropolitan area.  Is that much true?

10        MS. MORGAN:  Yes.

11        THE COURT:  And with regard to that, is it true that you

12  possessed or carried or used this firearm that's described here?

13  It's a Springfield Armory .40-caliber semi-automatic handgun and

14  a New England 12-gauge shotgun.  Is it true that you had those

15  guns and used those guns in connection with this drug-trafficking

16  activity?

17        MS. MORGAN:  I had the Pink one.

18        THE COURT:  I'm sorry?

19        MS. MORGAN:  I had the Pink gun.

20        THE COURT:  The Pink gun?

21        MS. MORGAN:  The Pink pump-action.

22        MR. BELL:  Judge, I think -- if I may, Judge?  We agree

23  that as part of the conspiracy these other guns were either --

24  that she either constructively possessed and/or carried those.

25  In particular, as set forth in the factual basis, as located in

1   her house there was a Pink pump-action shotgun that was mentioned

2   by -- in the discovery along with other guns, but, in particular,

3   the Pink pump-action shotgun that was found at her residence and

4   was recovered by law enforcement after her arrest.

5           THE COURT:  Okay.  So that's covered under the various

6   unrecovered firearms identified by numerous drug customers.  Is

7   that much true?

8           MS. MORGAN:  Yes.

9           THE COURT:  Okay.  So that was -- and what kind of a

10  firearm was that?

11          MS. MORGAN:  Umm --

12          THE COURT:  Do you know what it was?

13          MS. MORGAN:  The 12-gauge?

14          THE COURT:  Yeah.

15          MS. MORGAN:  Yes.  It was a Pink pump-action shotgun.

16          THE COURT:  Is that the New England one or is that a

17  different one?

18          MS. MORGAN:  That's a different one.

19          THE COURT:  Okay.  Tell me about that one.  That -- oh,

20  I see, it's down here.  It's says during the conspiracy period

21  including a Pink pump-action shotgun photographed by law

22  enforcement at Defendant Morgan's residence and a loaded 9mm Hi-

23  Point pistol loaded with -- Smith & Wesson .22-caliber pistol.

24  And a loaded Smith & Wesson -- which one of those did you have?

25          MS. MORGAN:  I had the Pink pump-action.

1    THE COURT:  Okay.  Were any of the others located where
2  you were?

3    MS. MORGAN:  No.

4    THE COURT:  Okay.  So you just had the Pink pump-action
5  gun?

6    MS. MORGAN:  No, these were with Butch at another
7  residence.

8    THE COURT:  Is there something else, Mr. Bell?

9    MR. BELL:  No, Your Honor.

10    THE COURT:  And so is it true that you had that gun in
11  connection with the drug-trafficking activity involving
12  methamphetamine, is that true?

13    MS. MORGAN:  Yes.

14    THE COURT:  And was that for your protection or the
15  protection of methamphetamine or what?

16    MS. MORGAN:  For my protection.

17    THE COURT:  Okay.  And so do you think you're actually
18  guilty of what you're charged with in Count Three?

19    MS. MORGAN:  Yes.

20    THE COURT:  Okay.  And looking at Count Five, again, the
21  period of time from January 1st of 2010, to January 13th of 2015,
22  you were here in the general Western District of Missouri.
23  That's everything including St. Joe and this general area on the
24  Missouri side.  That's all true, correct?

25    MS. MORGAN:  Yes.

1    THE COURT:  And did you know any of these folks that are

2    identified in this count?

3    MS. MORGAN:  Yes.

4    THE COURT:  Who did you know from that Count?

5    MS. MORGAN:  Elgin Dothage.

6    THE COURT:  Okay.  And is it true that you did rent,

7    use, maintain or manage or control a place for the purpose of

8    distributing and using methamphetamine and heroin?  Is that true?

9    MS. MORGAN:  Just -- not heroin but methamphetamines.

10   THE COURT:  Okay.  So you agree to the methamphetamine.

11   MS. MORGAN:  Yes.

12   THE COURT:  You weren't involved in the heroin?

13   MS. MORGAN:  No.

14   THE COURT:  Okay.  And so what was the location that

15   we're talking about there?  Where did you have -- where did you

16   do that?

17   MS. MORGAN:  My house.

18   THE COURT:  And where was that?

19   MS. MORGAN:  15010 Northeast 136th Street.

20   THE COURT:  And where is --

21   MS. MORGAN:  Kearney, Missouri.

22   THE COURT:  Oh, thank you.  Good.  Okay.  And that's --

23   is that up north?  Is that where --

24   MS. MORGAN:  It's Clay County.

25   THE COURT:  Oh, Clay County.  Okay.  And so with regard

1   to that, obviously, you did that knowingly, right?

2          MS. MORGAN:  Yes.

3          THE COURT:  And you did it intentionally, correct?

4          MS. MORGAN:  Yes.

5          THE COURT:  And you knew it was against the law, right?

6          MS. MORGAN:  Yes.

7          THE COURT:  Right.  And so do you think you're actually

8   guilty of Count Five?

9          MS. MORGAN:  Yes.

10         THE COURT:  Okay.  Now, let's go over to Count Seven.

11  And this is again this broad sweep of time, January 1st of 2010,

12  to July 7 of 2015.  And again, you were up in that northwest part

13  of Missouri, correct?

14         MS. MORGAN:  Yes.

15         THE COURT:  And did you know any of these folks listed

16  in here?

17         MS. MORGAN:  Yes.

18         THE COURT:  And who did you know there?

19         MS. MORGAN:  And before one was listed.  I've met Josh

20  Keith Bowers.  I knew Elgin Dothage, Franklin Charles Carter,

21  Steven Lee Schreier, Ronald Louis Roberts, José Ruiz-Salazar,

22  Gabriel Ruiz-Salazar, Gary Dewayne Brown, Brian Michael Bowers,

23  Ryan A. Battagler, Jackie R. Love, William Dean Campbell, Jason

24  Lee Kirtley, Marion Eugene Brammer, Darrin Gene Berry, Rodney

25  Earl King, Jason Daniel Davis.  I don't know -- this -- hold on,

1 I don't know him.  Oh, Anthony Ray Stevenson, Paula Rae Scott and

2 that's all.

3       THE COURT:  Okay.  And so you knew them in connection

4 with -- you may have known them in other connections but you knew

5 them in connection with the drug dealing activity?

6       MS. MORGAN:  Yes.

7       THE COURT:  And is it true that you engaged in an

8 agreement -- a conspiracy -- which is just an informal agreement

9 or an understanding between or among people here to engage in

10 drug-trafficking activity, --

11       MS. MORGAN:  Yes.

12       THE COURT:  -- is that true?  And did you do that

13 knowingly?

14       MS. MORGAN:  Yes.

15       THE COURT:  And willfully, right?

16       MS. MORGAN:  Yes.

17       THE COURT:  And did it involve an agreement or did the

18 agreement actually involve the distribution of 500 grams or more

19 of methamphetamine?  Do you have any reason to dispute that?

20       MS. MORGAN:  No.

21       THE COURT:  Okay.  So, do you think you're guilty

22 actually of Count Seven?

23       MS. MORGAN:  Yes.

24       THE COURT:  Okay.  Now, there's also an Allegation of

25 Forfeiture here and I just want to make sure that we get it on

1 the table here.  Is any of the personal property or real estate,

2 is that related to -- anything like that related to Ms. Morgan?

3          MR. BELL:  I don't believe so, Judge.

4          MR. KAVANAUGH:  No, Your Honor.

5          THE COURT:  It's just the --

6          MR. KAVANAUGH:  The shotgun would be forfeitable, I

7 believe.

8          THE COURT:  Just the shotgun, right?  And then there's

9 on the bottom of page 7, you might look there.  That there's a

10 reference to a total amount of currency that was generated as a

11 result of this alleged illegal behavior here.  They've got

12 $4,359,600 in currency which they think jointly all of these

13 folks were involved in.  And the agreement, I believe, involves a

14 forfeiture of anything that you might have including an agreement

15 to that amount.  Am I correct in that, Mr. Bell?

16          MR. BELL:  Correct, Your Honor.

17          THE COURT:  And so you understand that, you know, if the

18 Government could trace assets to the alleged illegal activity,

19 they could collect that up to $4,359,600.  Do you understand

20 that?

21          MS. MORGAN:  Yes.

22          THE COURT:  Okay.  Now, you may not have generated it

23 but you would be jointly responsible for everybody else's

24 behavior here too, so.  Okay.  Let me just check my cheat sheet

25 here so I'm not missing anything.  So, during that period of time

1  you were involved in that understanding or that agreement with

2  one or more of those other folks, correct?

3       MS. MORGAN:  Yes.

4       THE COURT:  Okay.  All right.  Good.  Now, I've covered,

5  I think, the factual basis, but if the Government's got any

6  additional questions about the factual basis, I want you to feel

7  comfortable in asking them.

8       MR. KAVANAUGH:  Nothing further, Your Honor.  Thank you.

9       THE COURT:  Mr. Bell, do you have any additional

10  questions you want to ask about the factual basis here?

11       MR. BELL:  Nothing, Your Honor.

12       THE COURT:  Okay.  All right.  If you want to confer

13  with your friend?

14       MR. BELL:  No, I -- no.  We're fine, Judge.  Thank you.

15       THE COURT:  Okay.  All right.  Good.  Now, let me kind

16  of get back on track here.  We've covered all that and the next

17  thing I need to talk to you about is this Plea Agreement.  Now,

18  this is a rather lengthy document.  I think there's some 16 pages

19  here in total here.  Have you had a chance to read all of that

20  and talk about it with Mr. Bell?

21       MS. MORGAN:  Yes.

22       THE COURT:  Is there -- I'm going to go through it with

23  you here just to cover the highlights.  So if you've got any

24  questions, you should feel comfortable in asking me about it.

25  Okay?

1          MS. MORGAN:  Okay.

2          THE COURT:  We're going to -- what I'm going to do is

3    I'm going to refer to the page at the bottom.

4          MS. MORGAN:  Okay.

5          THE COURT:  And then I'll refer to the paragraph that

6    I'm looking at.  Okay?  Now, at page 1, Paragraph 1, it talks

7    about the parties.  And this just binds you and the U.S. Attorney

8    for the Western District of Missouri.  It doesn't bind anybody

9    else.  Do you understand that?

10          MS. MORGAN:  Yes.

11          THE COURT:  And Paragraph 2 it talks about the three

12   counts you're going to plead to here involving the

13   methamphetamine business.  And then at page 2 at the top of the

14   page it talks about that forfeiture business here.  Any questions

15   about that?

16          MS. MORGAN:  No, sir.

17          THE COURT:  Then there's the factual basis at page 2,

18   Paragraph 3.  Have you read that?

19          MS. MORGAN:  Yes.

20          THE COURT:  And it goes on over to page 3 of that

21   document.  And do you believe that all that information is true?

22          MS. MORGAN:  Yes.

23          THE COURT:  And then at page 4 -- at page 3, Paragraph

24   4, it advises you that that information can be used by the judge

25   in terms of accepting the plea here and also in terms of

1    sentencing here. You understand that?

2         MS. MORGAN: Yes, sir.

3         THE COURT: And then go over to the next page 4, the

4    statutory penalties. Do you have any questions about any of

5    those?

6         MS. MORGAN: No.

7         THE COURT: All right. Then we're going to move on and

8    cover -- hold on. I'll get where I want to be. Oh, there's the

9    Government's agreements at page 7, Paragraph 7, and basically the

10    Government's saying that they're agreeing not bring any

11    additional charges for any criminal activity related to this

12    investigation in which they have venue and jurisdiction. And so,

13    anyway, that's their agreement. Do you understand that?

14         MS. MORGAN: Yes.

15         THE COURT: And then turn over to page 9, Paragraph 10.

16    I always get worried about the Sentencing Guidelines. Have you

17    talked with Mr. Bell about those?

18         MS. MORGAN: Yes.

19         THE COURT: And do you understand that, first of all,

20    they're advisory. They don't bind our judges, but our judges are

21    pretty careful about following them if they're appropriate. Do

22    you understand that?

23         MS. MORGAN: Yes.

24         THE COURT: And then at -- it goes down and talks about

25    what the guidelines appear to be here. And basically, they look

1 at two things.  They look at first of all the behavior -- the
2 illegal behavior that's alleged here.  They look at that and they
3 try to come up with a number for that.  And then they look down
4 another list and try to figure out what, if any, criminal history
5 you have.  So that's basically what it is.  It's like a grid that
6 you figure out your taxes on.  So, here it says that subparagraph
7 (b), it says that this provision of the guidelines requires a
8 finding of not less than a Level 30 and the parties reserve their
9 right to address at sentencing the presentence or the court's
10 determined drug level.  Do you understand what that means?

11          MS. MORGAN:  Yes.

12          THE COURT:  And then under (c) it says that the parties
13 recognize that there may be specific or aggravating and
14 mitigating circumstances but you're electing to address those at
15 sentencing.  In other words, we're not locking in anything today
16 about any of that business.  You understand that?

17          MS. MORGAN:  Yes.

18          THE COURT:  And then at (d) it says that you appear to
19 have admitted your guilt and accepted responsibility.  So that's
20 good news.  They're going to kick it down three levels as a
21 result of that.  And then at (e) it says that there's no
22 agreement on your criminal history.  And so what that means is
23 Probation's going to figure that out and figure out what you're
24 history has been and then the judge will make the final ruling on
25 where you fall onto the guidelines based on your criminal history

1  here.  Do you understand that?

2        MS. MORGAN:  Yes.

3        THE COURT:  Okay.  Now, that's about all of that, so I'm

4  not going to burden it.  I just wanted to point out one

5  additional part here under Paragraph 22 at page 15.  It says that

6  there are no undisclosed terms as described there in that portion

7  of the document.  Have you read that?

8        MS. MORGAN:  Uh.  What?

9            (Off Record: Attorney-Client Discussion)

10       MS. MORGAN:  Oh, yes.

11       THE COURT:  Okay.  And you understand what that means,

12 right?

13       MS. MORGAN:  Yes.

14       THE COURT:  Okay.  And so has everything you've been

15 promised then contained in the four corners of this document?

16       MS. MORGAN:  Yes.

17       THE COURT:  Has anyone, anywhere, anytime promised you

18 anything else?

19       MS. MORGAN:  No.

20       THE COURT:  Has anyone made any threats against you or

21 your family or anyone close to you to get you to come in here an

22 plead guilty?

23       MS. MORGAN:  No.

24       THE COURT:  Is it your free and voluntary act?

25       MS. MORGAN:  Yes.

1    THE COURT:  Okay.  Now, I'm going to ask you about your

2  counsel.  And I know Mr. Bell quite well, so I just need to make

3  sure that you and he had a good relationship here.  But have you

4  been getting along with Mr. Bell?

5    MS. MORGAN:  I get along with him very well.

6    THE COURT:  Okay.  And so is there anything that he's

7  done that you haven't wanted him to do?

8    MS. MORGAN:  No.

9    THE COURT:  Is there anything that he's failed to do

10  that you've asked him to do?

11    MS. MORGAN:  No.

12    THE COURT:  Okay.  So you're satisfied with his

13  performance?

14    MS. MORGAN:  Yes.

15    THE COURT:  Tell me your age.

16    MS. MORGAN:  Forty.

17    THE COURT:  And how far have you gone in school?

18    MS. MORGAN:  I completed college and one year of law

19  school.

20    THE COURT:  Okay.  So you obviously read, write and

21  understand the English language, right?

22    MS. MORGAN:  I do.

23    THE COURT:  Yeah.  And with regard to your physical

24  health, is there anything about your physical health today that

25  would affect your ability to plead guilty here?

1    MS. MORGAN:  No.

2    THE COURT:  Anything about your mental health would

3    affect your ability to plead guilty?

4    MS. MORGAN:  No.

5    THE COURT:  Are you on any kind of substance, be it

6    alcohol or controlled substance, whether prescribed or not

7    prescribed, that would affect your ability to make a good

8    decision today?

9    MS. MORGAN:  No.

10   THE COURT:  Okay.  And with regard to the factual basis

11   and anything else, I want to give the lawyers an opportunity.  Is

12   there the Government thinks I've neglected to cover before I ask

13   for the plea here?

14   MR. KAVANAUGH:  Yes, Your Honor, a couple matters.  One,

15   back to Paragraph 15 of the Plea Agreement which addresses the

16   Waiver of Appellate and Post-Conviction Rights.  Just an

17   acknowledgment from the defendant that she understands that she

18   is agreeing to waive via her unconditional plea of guilty the

19   ability to appeal or collaterally attack her finding of guilt as

20   well as any sentence imposed except for the following basis or

21   reasons: ineffective assistance of counsel, prosecutorial

22   misconduct, or an illegal sentence that is imposed.  One other --

23   THE COURT:  First, before you get to that, do you

24   understand that?

25   MS. MORGAN:  Yes.

1      THE COURT:  You're giving up all those rights.  Go

2  ahead.

3      MR. KAVANAUGH:  Thank you, Your Honor.  One other point

4  under Rule 11, just to advise the defendant that prior to

5  imposing sentence, that the court in determining a sentence, the

6  court is obligated to calculate the applicable guideline range

7  and consider the range, possible departures under the Sentencing

8  Guidelines pursuant to 18 U.S.C. 3553(a).

9      THE COURT:  Okay.  Do you understand that?

10      MS. MORGAN:  Yes.

11      THE COURT:  Okay.  Well, you're better off than I am

12  then because I don't know that I understand what that -- what

13  does that mean?  Give us that in real English.

14      MR. KAVANAUGH:  Yes, Your Honor.  At the time of

15  sentencing, the court will ultimately have to calculate the

16  guidelines.  But also beyond the guidelines under U.S.S.G. would

17  also look to the statutory factors considered at sentencing prior

18  to imposing sentence which is found under that section.

19      THE COURT:  Okay.  All right.  So anything else by the

20  Government?

21      MR. KAVANAUGH:  No, Your Honor.

22      THE COURT:  And so any additional examination or

23  questions or issues you want to take up, Mr. Bell?

24      MR. BELL:  No, Your Honor.  Thank you.

25      THE COURT:  Okay.  Now, I do this with everyone who's in

1  front of me, so don't think I'm picking on you.  But invariably

2  from time to time we find that defendants have something that's

3  been bothering them that nobody's asked them about and nobody's

4  given them a good answer to it.  And so, if there's anything

5  hanging out there like that that is worrisome to you and you

6  haven't been able to get a good answer for it, I'll at least try

7  to answer it.  I don't know if it will be good or not but do you

8  have anything like that?

9          MS. MORGAN:  No.

10          THE COURT:  Okay.  Mr. Bell, then I turn to you at this

11  point and ask what is the plea?

12          MR. BELL:  Guilty to all three charges.

13          THE COURT:  With regard to your pleas, they are now

14  guilty pursuant to this plea bargain arrangement on those three

15  counts that we've just gone through, correct?

16          MS. MORGAN:  Yes.

17          THE COURT:  Okay.  I'll go ahead and accept that plea.

18  I'll order a Presentence Investigation and what will happen from

19  here is it usually takes between eight and ten weeks before

20  there's a scheduled sentencing.  You'll get a chance to see it,

21  to make sure the report is accurate, and then we'll move forward

22  with Judge Kays doing the final sentencing.

23          MS. MORGAN:  All right.  Thank you.

24          MR. BELL:  Judge, pursuant to the Plea Agreement, she's

25  to go into custody.  However, without objection from the

1  Government, I'd like the Court's permission to allow her to meet

2  with the PSR author at this moment and we will then self-

3  surrender to the U.S. Marshal's Service.

4          THE COURT:  Yeah, yeah.  No, that's fine with me.  No, I

5  don't think we need to take her into custody right this second,

6  so.  I'm sure Mr. Bell will deposit her with the Marshals.

7          MR. BELL:  Yes.

8          THE COURT:  Okay.  Anything else?

9          MR. KAVANAUGH:  No, Your Honor.

10         THE COURT:  Okay.  Anything else, Mr. Bell?

11         MR. BELL:  No, Your Honor.  Thank you.

12         THE COURT:  Thank you all very much.

13                 (Court Adjourned at 11:45 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6          I certify that the foregoing is a correct transcript
from the electronic sound recording of the proceeding in the
7    above-entitled matter.

8

         /s/ Lissa C. Whittaker          June 12, 2017
9        Signature of transcriber              Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25