IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Criminal Action No. 15-06004-02-CR-SJ-DGK |
| SABRENA LYNN MORGAN, | ) ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**TO ACCEPT DEFENDANT'S GUILTY PLEA**

On June 9, 2017, I held a change-of-plea hearing after this case was referred to me by United States District Court Judge Greg Kays. I find that Defendant's plea is voluntary and therefore recommend that it be accepted.

*I.  BACKGROUND*

On July 7, 2015, Defendant was indicted with one count of possessing firearms in connection with a drug trafficking offense, in violation of 18 U.S.C. §924(c)(1)(A)(i); one count of maintaining a drug premises, in violation of 21 U.S.C. § 856 (a) and (b); and one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. A change-of-plea hearing was held on June 9, 2017. Defendant was present, represented by retained counsel David Bell. The government was represented by Assistant United States Attorney Brad Kavanaugh. The proceeding was recorded and a transcript of the hearing was filed on June 12, 2017 (Doc. No. 474).

*II.  AUTHORITY OF THE COURT*

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides

that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. See Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991); Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. Torres, 258 F.3d at 795. Applying the Peretz holding and adopting the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. (quoting Williams, 23 F.3d at 633). Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting Williams, 23 F.3d at

633).

The Torres court also addressed the implications of such a delegation for Article III's case and controversy clause.  Id.  Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge.  Id.  Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role.  Id.

Based on the above, I find that, with the consent of the defendant, the District Court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III.   FINDINGS OF FACT

1. The parties consented to the delegation of the change of plea to the magistrate judge (Tr. at 2-3).

2. On July 7, 2015, Defendant was indicted with one count of possessing firearms in connection with a drug trafficking offense, in violation of 18 U.S.C. §924(c)(1)(A)(i); one count of maintaining a drug premises, in violation of 21 U.S.C. § 856 (a) and (b); and one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846.  Defendant indicated that she understood the nature of the charges (Tr. at 4-5).

3. The statutory penalty for possessing firearms in connection with a drug trafficking offense is not less than 5 years and not more than life imprisonment, not more than a $250,000 fine, not more than 5 years supervised release, and an $100 mandatory special assessment fee (Tr. at 5).  The statutory penalty for maintaining a drug premises is not more than 20 years imprisonment, not more than a $500,000 fine, not more than 3 years supervised release, and an $100 mandatory special assessment fee (Tr. at 5-6).  The statutory penalty for conspiracy to

distribute methamphetamine is not less than 5 years and not more than life imprisonment, not more than a $10,000,000 fine, not less than 5 years supervised release, and an $100 mandatory special assessment fee (Tr. at 6). Defendant was informed of the penalty ranges and indicated that she understood (Tr. at 5-6).

4. Defendant was advised of the following:

    a. That she has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 6-7);

    b. That she has the right to assistance of counsel throughout the trial (Tr. at 7);

    c. That Defendant is presumed innocent, and the government has the burden of coming forward to prove Defendant's guilt beyond a reasonable doubt (Tr. at 7);

    d. That Defendant's attorney would have the opportunity to cross-examine the government's witnesses (Tr. at 7-8);

    e. That Defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that Defendant may not testify at trial (Tr. at 8);

    f. That Defendant has the right to subpoena witnesses to testify on her behalf (Tr. at 8); and

    g. That Defendant has the right to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 9).

5. Government counsel stated that if this case were to be tried, the evidence would be that in 2010, law enforcement initiated an investigation into a drug-trafficking organization

distributing methamphetamine in the northwest Missouri and northeast Kansas area (Tr. at 11). Indictments followed thereafter. During the course of that prosecution, in addition to interviews, proffers and additional investigation by law enforcement, additional defendants were identified as being involved in the distribution conspiracy (Tr. at 11). The time period for that drug-trafficking conspiracy was from 2010 to 2015 (Tr. at 11). In particular, Jose and Gabriel Ruiz and Gregory Bullock were the primary sources of supply of the methamphetamine as part of this conspiracy (Tr. at 11-12). The Ruiz brothers and Bullock obtained large amounts of methamphetamine then sold and distributed it among others, including Defendant Morgan and the other defendants identified within the Superseding Indictment (Tr. at 12). Thereafter, Defendant Morgan and others distributed that methamphetamine to others throughout Clay, Ray, Clinton and Buchanan Counties, all within the Western District of Missouri (Tr. at 12). During the dates of this conspiracy, Defendant Morgan was in actual or constructive possession of and carried firearms (Tr. at 12). These acts all occurred within in the Western District of Missouri and included some or all of the following firearms: a pink pump-action shotgun recovered from Defendant Morgan's residence after her arrest and various unrecovered firearms identified by numerous drug customers and charged and uncharged co-conspirators as in the possession of Defendant during the conspiracy period (Tr. at 12). During the dates of the conspiracies, Defendant Morgan and others maintained control of physical places within the Western District of Missouri for at least one purpose of storing, distributing and using methamphetamine (Tr. at 12). In 2014, multiple witnesses gave statements about their knowledge of and involvement with Defendant Morgan and other conspirators in obtaining and distributing methamphetamine (Tr. at 12). Those statements and others obtained later detail that Defendant Morgan obtained large amounts of methamphetamine from the Ruiz brothers and others, then distributed the

methamphetamine to a number of others, some of whom redistributed it again (Tr. at 12-13). The money that Defendant Morgan received from those she distributed to was then used to obtain additional methamphetamine for distribution (Tr. at 13). Defendant's involvement in the conspiracy with others resulted in a methamphetamine responsibility in excess of 5 kilograms of methamphetamine (Tr. at 13).

6. Defendant was placed under oath and advised of perjury implications for any misrepresentations (Tr. at 11, 13). Defendant stated that between the dates of January 1, 2010 and January 13, 2015, she was in the Kansas City, Missouri metropolitan area (Tr. at 14). During that timeframe, she possessed, carried or used a pink pump-action shotgun (Tr. at 16). Between January 1, 2010 and January 13, 2015, Defendant knowingly and intentionally rented, used, maintained or managed a residence located at 15010 Northeast 136th Street in Kearney, Missouri, for the purpose of distributing and using methamphetamine (Tr. at 17-18). She knew doing so was against the law (Tr. at 18). Between January 1, 2010 and July 7, 2015, Defendant knew the following individuals in connection with drug dealing activity: Elgin Dothage, Franklin Charles Carter, Steven Lee Schreier, Ronald Louis Roberts, Jose Ruiz-Salazar, Gabriel Ruiz-Salazar, Gary Dewayne Brown, Brian Michael Bowers, Ryan Battagler, Jackie R. Love, William Dean Campbell, Jason Lee Kirtley, Marion Eugene Brammer, Darrin Gene Berry, Rodney Earl King, Jason Daniel Davis, Anthony Ray Stevenson and Paula Rae Scott; she had met Josh Keith Bowers (Tr. at 17, 18-19). Defendant Morgan knowingly and willfully engaged in an agreement with such individuals to distribute 500 grams or more of methamphetamine (Tr. at 19, 20-21).

7. Defendant understood the terms of the plea agreement (Tr. 21-25, 27-28). In exchange for the Defendant pleading guilty to Counts Three, Five and Seven, the Government

agreed not to bring any additional charges for criminal activity related to this investigation (Tr. at 23)

8. No one had made any threats or any other promises in order to get Defendant to plead guilty (Tr. at 25).

9. Defendant was satisfied with Mr. Bell's performance (Tr. at 26). There is nothing Defendant asked Mr. Bell to do that Mr. Bell did not do (Tr. at 26). Likewise, there is nothing Mr. Bell has done that Defendant did not want him to do (Tr. at 26).

10. Defendant is 40 years old (Tr. at 26). She completed college and one year of law school and can read, write and understand the English language well (Tr. at 26). Defendant has no physical or mental health concerns that would prevent her from entering an intelligent and voluntary plea of guilty (Tr. at 26-27). She was not under the influence of any kind of drug or alcohol (Tr. at 27).

11. Defendant tendered a plea of guilty to Counts Three, Five and Seven of the Superseding Indictment (Tr. at 29).

## V. ELEMENTS OF THE CHARGED OFFENSES

To sustain a conviction for possession of firearms in furtherance of a drug trafficking offense, the government must prove that Defendant: (1) committed a drug trafficking crime, and (2) possessed the firearms in furtherance of that crime. United States v. Robinson, 617 F.3d 984, 988 (8th Cir. 2010); United States v. Saddler, 538 F.3d 879, 888 (8th Cir. 2008).

To sustain a conviction for maintaining a drug premises, the government must prove that Defendant: (1) knowingly and intentionally; (2) opened or maintained a place; (3) for the purpose of using, manufacturing or distributing a controlled substance. United States v. Payton, 636 F.3d 1027, 1043 (8th Cir. 2011). See also United States v. Roberts, 913 F.2dd 211, 219 (5th Cir. 1990).

To sustain a conviction for conspiracy to distribute methamphetamine, the Government must prove: (1) there was an agreement to distribute a controlled substance; (2) the defendant knew of the agreement; and (3) the defendant intentionally joined the conspiracy. See United States v. Savatdy, 452 F.3d 974, 977 (8th Cir. 2006); United States v. Shoffner, 71 F.3d 1429, 1433 (8th Cir. 1995).

## V. CONCLUSION

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a magistrate judge for issuance of a report and recommendation on whether Defendant's guilty plea should be accepted.

2. Defendant has consented to having her plea taken by a magistrate judge.

3. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of Counts Three, Five and Seven of the Superseding Indictment.

A copy of this Report & Recommendation, transcript and the plea agreement are being forwarded to the District Judge for review. It is, accordingly

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting Defendant's guilty pleas and adjudging Defendant guilty.

Counsel are advised that each has fourteen days from the date of this Report & Recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
July 14, 2017